1  Rosemary M. Rivas (SBN 209147)
   Rosanne L. Mah (SBN 242628)
2  Brian E. Johnson (*pro hac vice forthcoming*)
3  **GIBBS LAW GROUP LLP**
   1111 Broadway, Suite 2100
4  Oakland, California 94607
   (510) 350-9700 (tel.)
5  (510) 350-9701 (fax)
   rmr@classlawgroup.com
6  rlm@classlawgroup.com
7  bej@classlawgroup.com

8  *Attorneys for Plaintiff Daniel Varady*

9

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

10

11

| | |
|---|---|
| 12  DANIEL VARADY, individually and on behalf of all others similarly situated, | Case No. |
| 13 | |
| 14                    Plaintiff, | **CLASS ACTION COMPLAINT** |
| 15 | **JURY TRIAL DEMANDED** |
| 16  v. | |
| 17  WELLS FARGO & COMPANY and WELLS FARGO CLEARING SERVICES, LLC, d/b/a | |
| 18  WELLS FARGO ADVISORS, | |
| 19 | |
| 20                    Defendants. | |
| 21 | |

22

23

24

25

26

27

28

TABLE OF CONTENTS

I. NATURE OF ACTION .................................................................................. 1

II.    PARTIES ............................................................................................. 2

III.   JURISDICTION AND VENUE ............................................................ 3

IV.    FACTUAL ALLEGATIONS ................................................................ 3

    A.    Wells Fargo's Bank Deposit Sweep Program ............................. 3

    B.    Wells Fargo's Duties .................................................................... 6

        1.    Contractual Duties .............................................................. 6

        2.    Duties Imposed on Wells Fargo by Law ............................ 7

    C.    Wells Fargo Breached Its Contractual Duties to Its Customers .............. 7

    D.    Wells Fargo Reaps Significant Benefits to its Customers' Detriment ...... 9

    E.    Plaintiff's Experience ................................................................ 10

V.     CLASS ACTION ALLEGATIONS ................................................... 10

VI. CAUSES OF ACTION ........................................................................... 13

PRAYER FOR RELIEF ................................................................................ 18

DEMAND FOR JURY TRIAL .................................................................... 19

CLASS ACTION COMPLAINT

Plaintiff Daniel Varady, individually and on behalf of all others similarly situated, alleges the following based on his personal experience and his counsel's investigation:

## I. NATURE OF ACTION

1. Plaintiff brings this proposed class action suit against Defendants Wells Fargo & Company and Wells Fargo Clearing Services, LLC, d/b/a Wells Fargo Advisors (collectively, "Wells Fargo") based on Wells Fargo's actions and conduct with respect to its cash sweep program.

2. Wells Fargo offers its investment clients who have cash that is not being used for trading purposes the opportunity to hold their uninvested monies in what is known as a "cash sweep account." The cash sweep accounts at issue in this case are the Wells Fargo Standard Bank Deposit Sweep and the Wells Fargo Expanded Bank Deposit Sweep (collectively, "Wells Fargo's Bank Deposit Sweep Program"). Plaintiff and Class members are clients with Wells Fargo and their uninvested cash was automatically transferred into Wells Fargo's cash sweep accounts pursuant to the Wells Fargo Bank Deposit Sweep Program.

3. As an investment adviser and as an agent under its contract with Plaintiff and the proposed Class defined herein, at all relevant times Wells Fargo had a fiduciary duty to act in their best interests. Additionally, under the terms of Wells Fargo's Bank Deposit Sweep Program—which were incorporated into its contract with Plaintiff and Class members—Wells Fargo had a contractual obligation to negotiate a reasonable rate of return on Plaintiff and Class members' uninvested cash.

4. Unfortunately for Plaintiff and Class members, Wells Fargo breached its fiduciary duty to them and its contractual obligations. Wells Fargo deposited Plaintiff and Class members' uninvested cash with banks (both affiliated and unaffiliated) that pay low and unreasonable rates of return to Wells Fargo's investment customers, but paid Wells Fargo increased fees due to lower rates paid to customers.

5. In November 2023, the Securities and Exchange Commission began investigating Wells Fargo's cash sweep practices. And in July 2024, Wells Fargo announced that it would pay its customers enrolled in its cash sweep accounts higher rates of interest. Wells Fargo further

reported that the price increase would decrease its revenues by $350 million, underscoring the enormous profits that Wells Fargo earned for itself at the expense of Plaintiff and Class members.

6.     Plaintiff alleges that Wells Fargo's conduct was unlawful, as described in further detail below and alleges on behalf of himself and others similarly situated claims for breach of fiduciary duty, breach of contract, gross negligence, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Plaintiff seeks all available monetary and equitable relief, including damages, restitution, and all other appropriate relief.

## II.     PARTIES

7.     Plaintiff Daniel Varady is a resident and citizen of Scotch Plains, New Jersey.

8.     Defendant Wells Fargo & Company ("Wells Fargo") is headquartered at 420 Montgomery Street, San Francisco, California 94101. Wells Fargo is a leading financial services company with assets of approximately $1.9 trillion and office locations across the world. Wells Fargo touts itself as a company that "proudly serves consumers" and "partner with our customers to help them achieve their financial goals[.]" Wells Fargo is named as a defendant in its capacity as the parent company and control person of Wells Fargo Clearing Services, LLC, dba Wells Fargo Advisors.

9.     Defendant Wells Fargo Clearing Services, LLC, dba Wells Fargo Advisors ("WFA") is a dually registered broker-dealer and Registered Investment Advisor or "RIA" that offers brokerage and investment advisory services to its nationwide client base. Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC. WFA offers brokerage services to Plaintiff and Class members, acting as its customers' agent regarding the establishment, maintenance, and operation of the Wells Fargo Bank Deposit Sweep Program. Wells Fargo Clearing Services, LLC, dba WFA is a majority-owned subsidiary of the defendant Wells Fargo. In BrokerCheck reports filed with the Financial Industry Regulatory Authority ("FINRA"), Wells Fargo Clearing Services states that it is 75% or more owned by Wells Fargo, and that as owner, Wells Fargo directs the management or policies of the firm.

### III.    JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which one or more members of the proposed Class, including Plaintiff, are citizens of a state different from Defendants. The Court has supplemental jurisdiction over the alleged state law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy.

11.    This Court may exercise jurisdiction over Defendant because they are registered to conduct business in California; have sufficient minimum contacts in California; and intentionally avail themselves of the markets within California through the promotion, sale, and marketing of their services, thus rendering the exercise of jurisdiction by this Court proper and necessary.

12.    Venue is proper in this District under 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims emanated from this District.

### IV.    FACTUAL ALLEGATIONS

#### A.    Wells Fargo's Bank Deposit Sweep Program

13.    Wells Fargo is one of the largest financial services firms in the country, providing investment services nationwide.

14.    Wells Fargo, like many financial institutions, provides so-called "cash sweep" programs.

15.    Under these programs, customers with cash that is not being utilized for trading is automatically swept into interest-bearing deposit accounts with banks, most of whom are affiliated with Wells Fargo.

16.    Wells Fargo offers two similar, but different types of cash sweep accounts: the Expanded Bank Deposit Sweep and the Standard Bank Deposit Sweet, referred to collectively as the "Wells Fargo Bank Deposit Sweep Program" in this Complaint.

17.    Under the Wells Fargo Bank Deposit Sweep Program, each business day, Wells

Fargo sweeps eligible clients' uninvested cash balances into interest bearing deposit accounts with a network of bank partners that participate in the Wells Fargo Bank Deposit Sweep Program.

18.     Uninvested cash can include the initial cash deposits with Wells Fargo before the cash is invested in a security—if the Wells Fargo customer has enrolled in the Wells Fargo Bank Deposit Sweep Program—or funds left in the account after an investment is sold.

19.     For the Standard Bank Deposit Sweep, the cash is swept into deposit accounts with Wells Fargo Affiliated Banks.

20.     For the Expanded Bank Deposit Sweep, the uninvested cash is swept into an interest-bearing deposit account with one of five banks including Wells Fargo Affiliated Banks and Unaffiliated Banks.

21.     The Standard Bank Deposit Sweep and Expanded Bank Deposit Sweep are separate products from Wells Fargo's investment advisory services and are optional.

22.     The deposit accounts in the Wells Fargo Bank Deposit Sweep Program have very low rates of return. As of August 7, 2024, the interest rates Wells Fargo paid to its customers with Cash Sweep Program deposits ranged as low as 0.05% for accounts with less $1 million in household assets.[1]

23.     For comparison, according to the FDIC, the average interest rate on a savings deposit account is 0.45%.[2]

24.     Wells Fargo, however, earns significant net interest income from its cash sweep program —that is, the difference between the interest its customers receive, and the amount of interest earned by Wells Fargo and its bank partners from the use of the uninvested cash in its cash sweep program.

25.     After becoming the subject of regulatory scrutiny, Wells Fargo announced in July of 2024 that it would increase the interest rates for its cash sweep program, resulting in a reduction

---

[1] https://www.wellsfargoadvisors.com/financial-services/account-services/cash-sweep/rates.htm (last accessed August 8, 2024).
[2] https://www.fdic.gov/resources/bankers/national-rates/ (last accessed August 7, 2024).

of revenue to Wells Fargo of approximately $350 million *per year*.[3]

26. Wells Fargo has been able to earn these kinds of massive revenues because it placed its interests above those of Plaintiff and Class members, thereby breaching its legal and contractual duties to Plaintiff and Class members.

27. In particular, the interest rates on Wells Fargo's cash sweep accounts were set by Wells Fargo's Affiliated Banks in consultation with Wells Fargo[4] and it failed to negotiate a reasonable interest rate on behalf of its customers when these rates were set.

28. Additionally, under the Wells Fargo Bank Deposit Sweep Program, Unaffiliated Banks were required to set their interest rates at the same rate as the Affiliated Banks.[5]

29. This kept the interest Wells Fargo customers earned on their cash sweep deposits artificially low and was a breach of Wells Fargo's legal and contractual obligations to its customers.

30. The terms and conditions for Wells Fargo's cash sweep accounts are set forth in the General Account Agreement and Disclosure Documents ("General Agreement"), which incorporates the terms of the Cash Sweep Program Disclosure Statement ("Cash Sweep Disclosure").[6]

31. The Cash Sweep Disclosure states that Wells Fargo assumes "no obligation to seek or negotiate interest rates *in excess of any reasonable rate* of interest the Affiliated Banks are willing to credit,"[7] thereby creating an obligation, as an agent and fiduciary of its clients, to negotiate a *reasonable rate* of interest, which Wells Fargo purposely failed to do so it could earn more revenue for itself (emphasis added).

32. The rates of return were far below what Wells Fargo customers could have otherwise earned on their uninvested cash. As a comparison, as of August 7, 2024, Wells Fargo competitor Vanguard's cash sweep program has an interest rate of 4.5% compared Wells Fargo's,

---

[3] https://www.advisorhub.com/wells-fargo-to-lose-350-million-in-revenue-as-it-raises-rates-on-client-cash/ (last accessed August 8, 2024).
[4] https://www.wellsfargoadvisors.com/bw/forms/578326.pdf (last accessed August 7, 2024).
[5] *Id.*
[6] https://www.wellsfargoadvisors.com/bw/wellstrade/forms/589852.pdf.
[7] *Id.*

which is as low as 0.05%.[8]

33. While Wells Fargo customers received artificially and unreasonably low rates, Wells Fargo received the difference between what it agreed to pay its customers and what the program banks are willing to pay Wells Fargo for the large cash deposits—an amount that is not disclosed to Wells Fargo customers. As a result of its practices, Wells Fargo was able to line its pockets with massive revenues; at least $350 million dollars in revenue annually and possibly more.

34. In failing to negotiate reasonable rates, Wells Fargo breached its contractual and fiduciary obligations to its customers.

### B. Wells Fargo's Duties

#### 1. Contractual Duties

35. In operating its cash sweep program, Wells Fargo agreed to act as an agent on behalf of its advisory clients.

36. The Cash Sweep Disclosure states:

> Wells Fargo Advisors **will act as your agent in establishing and maintaining the Bank Deposit Sweep Programs**, including making deposits to and withdrawals from the Bank Deposit Sweep Programs. Your first deposit into the Standard Bank Deposit Sweep or Expanded Bank Deposit Sweep **will constitute your appointment of Wells Fargo Advisors as your agent** in connection with the Standard Bank Deposit Sweep or Expanded Bank Sweep. (Emphases added).[9]

37. As its customers' agent and pursuant to its contract agreements, Wells Fargo was required to act in their best interests and not put its own personal gain ahead of its clients.

38. Since Wells Fargo was acting as an agent of its customers in operating its cash sweep program, it was obligated to operate it in a way that put the interests of WFA customers first in accordance with its agreement, instead of extracting exorbitant fees for its own benefit.

---

[8] https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last accessed August 7, 2024).
[9] https://www.wellsfargoadvisors.com/bw/forms/578326.pdf (last accessed August 7, 2024).

39. In failing to negotiate reasonable rates for its customers during the operation of its cash sweep program, Wells Fargo breached both its contractual and fiduciary obligations to customers.

## 2. Duties Imposed on Wells Fargo by Law

40. In acting as an investment adviser for an actively managed client account, Wells Fargo owes its clients a fiduciary duty under federal law. *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 CFR § 276 (July 12, 2019) ("Under federal law, an investment adviser is a fiduciary.").

41. Pursuant to these regulations, Wells Fargo was obligated to "serve the best interest of its client and not subordinate its client's interests to its own." *Id.* And Wells Fargo cannot "place its own interests ahead of the interests of its client." *Id.*

42. Wells Fargo customers are also owed a duty of care, and Wells Fargo is required to use its skills and expertise for the benefit of its clients.

43. Wells Fargo owes a similar duty of care to its retail clients pursuant to Regulation Best Interest ("Reg. BI"), 17 C.F.R. § 240.15l-1.

44. Reg. BI applies only to retail investors, i.e., natural persons, or the legal representatives, who receive investment advice, used primarily for personal, family, or household purposes. 17 C.F.R. § 240.15l-1(b)(1).

45. Like SEC conduct rules, Reg. BI also requires Wells Fargo to "act in the retail customer's best interest and cannot place its own interests ahead of its customer's interests." 84 Fed. Reg. 33318, 33320.

46. As described and alleged herein, Wells Fargo failed to abide by its fiduciary duties as set forth under federal law.

## C. Wells Fargo Breached Its Contractual Duties to Its Customers

47. Wells Fargo breached its fiduciary and contractual duties by failing to negotiate reasonable interest rates for its customers' deposits in operating its cash sweep program.

48. Through its contractual and legal duties, Wells Fargo was obligated to act in the best interest of its clients consistent with the General Agreement. Wells Fargo's practice of

extracting excessive fees from its customers' cash sweep deposits, through unreasonably low interest rates, was overwhelmingly detrimental to its customers' interests.

49. While Wells Fargo tried to disclaim any obligation to negotiate an interest rate that is "in excess of any reasonable rate" for its customers' cash sweep deposits, *it did not disclaim* an obligation to negotiate a reasonable rate but took that obligation on.

50. Wells Fargo did not negotiate reasonable rates of interest for its customers' cash sweep deposits, but instead it worked in consultation with its Affiliated Bank partners to set artificially and unreasonably low interest rates.

51. While the General Agreement and Cash Sweep Disclosure do not define "reasonable," reasonableness is often considered synonymous with "fair" or "moderate" under the law.[10]

52. The Department of Labor defined a "reasonable" rate of interest in 2003 and suggested one way of determining a "reasonable" rate is to refer to rates "offered by other banks" or by "money market funds."[11]

53. Compared to its competitors, the Wells Fargo Bank Deposit Sweep Program's interest rates are substantially lower to similar sweep products offered by other financial institutions.

54. The rates of four of Wells Fargo's competitors are provided in the table below:

| Wells Fargo Competitor | Cash Sweep Interest Rate |
|---|---|
| **Interactive Brokers**[12] | 4.83% |
| **MooMoo**[13] | 5.1% |
| **Vanguard**[14] | 4.5% |
| **Webull**[15] | 5.0% |

---

[10] Reasonable, Black's Law Dictionary (12th ed.).
[11] 68 Fed. Reg. 34646, at 34648 (June 10, 2003)
[12] https://www.interactivebrokers.com/en/accounts/fees/pricing-interest-rates.php (last accessed August 7, 2024).
[13] https://www.moomoo.com/us/invest/cashsweep (last accessed August 7, 2024).
[14] https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last accessed August 7, 2024).
[15] https://www.webull.com/cash-management (last accessed August 7, 2024).

55.     Not only are Wells Fargo's interest rates significantly lower than its competitors, but they are also substantially lower than interest rates for money market fund rates.

56.     Many of Wells Fargo's competitors offer programs that sweep uninvested cash into money market funds where their customers receive substantially higher returns on their cash.

57.     For example, Wells Fargo competitor Fidelity offers a program that sweeps uninvested cash into money market funds that earn approximately 5%.[16] Vanguard's sweep program offers money market funds as an option as well, with yield rates also around 5%.[17] But not Wells Fargo.

58.     By setting substantially lower rates, Wells Fargo put its own interests above its customers, making substantial net income revenue at its customers' expense.

**D.      Wells Fargo Reaps Significant Benefits to its Customers' Detriment**

59.     The terms of Wells Fargo's cash sweep program state that Wells Fargo benefits "financially from cash balances held in the Bank Deposit Sweep Programs through the 'spread'" from which WFA receives fees from its bank partners.[18]

60.     The "spread" is the difference between the interest Wells Fargo agrees to pay to its customers in its cash sweep program and the interest Wells Fargo and its bank partners earn using Wells Fargo's customers' cash assets—through lending, investments, etc.[19]

61.     The difference between what Wells Fargo earns and what it pays its customers is Wells Fargo's net interest income.

62.     Wells Fargo earns substantial net interest income from its customers' cash sweep deposits.

---

[16] https://www.fidelity.com/go/manage-cash-rising-costs (last accessed August 8, 2024).
[17] https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account and https://investor.vanguard.com/investment-products/money-markets (last accessed August 8, 2024).
[18] https://www.wellsfargoadvisors.com/bw/forms/578326.pdf (last accessed August 7, 2024).
[19] *Id.*

63.     After an SEC investigation into its cash sweep practices in late 2023, Wells Fargo stated in an earnings call in July 2024 that it would raise the interest rate that Wells Fargo customers receive on their cash sweep deposits.[20]

64.     Although Wells Fargo did not announce the details of the rate increase, executives stated they expected the increase in interest rates to result in a loss of $350 million in revenue to Wells Fargo for the year.[21]

65.     Thus, Wells Fargo had an obvious financial incentive to maintain the artificially low interest rates to keep the "spread" that it earns, i.e., net income, higher than it otherwise would have if Plaintiff and Class members had received a reasonable rate of interest.

66.     This adverse incentive is what led to Wells Fargo's failure to negotiate reasonable interest rates for its customers contrary to its contractual and legal obligations.

### E.     Plaintiff's Experience

67.     Plaintiff Varady has a brokerage account with Wells Fargo Advisory and has been a customer of Wells Fargo since 2011. Plaintiff Varady is enrolled in Wells Fargo's Standard Bank Deposit Sweep, and so his uninvested cash is automatically swept into the banks that Wells Fargo selects in its discretion at the low interest rates alleged herein, pursuant to the Wells Fargo Bank Deposit Sweep Program.

### V.     CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action individually and on behalf of all other persons similarly situated (the "Nationwide Class") pursuant to the Federal Rule of Civil Procedure 23(b)(2), (b)(3), and (c)(4) initially defined as follows:

> All persons who had cash deposits or balances in Wells Fargo Bank Deposit Cash Sweep Program.

69.     The Nationwide Class is referred to herein as "Class."

---

[20] https://www.advisorhub.com/wells-fargo-to-lose-350-million-in-revenue-as-it-raises-rates-on-client-cash/ (last accessed August 8, 2024).

[21] https://www.advisorhub.com/wells-fargo-to-lose-350-million-in-revenue-as-it-raises-rates-on-client-cash/ (last accessed August 8, 2024).

70. Excluded from the proposed Class are Defendants, any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants; and judicial officers to whom this case is assigned and their immediate family members.

71. Plaintiff reserves the right to re-define the Class definition after conducting discovery.

72. **Numerosity (Fed. R. Civ. P. 23(a)(1))**. The Class members are so numerous that joinder of all members is impracticable. The precise number of Class members and their identities are unknown to Plaintiff currently. However, Well Fargo "provides investment advice and guidance to clients through nearly 12,000 Financial Advisors and referrals from more than 4,000 Licensed Bankers in retail branches across the U.S. Wells Fargo Advisors administers $1.9 trillion in client assets as of June 30, 2021."[22] The parties will be able to identify Class members and the exact size of the Class through discovery and Defendants' records.

73. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3))**. Common questions of law and fact exist for each of the claims and predominate over questions affecting only individual members of the Class. Questions common include, but are not limited to, the following:

> a. Whether Defendants owed fiduciary duties to Plaintiff and Class members in the operation of the Wells Fargo Bank Deposit Sweep Program;
>
> b. Whether Defendants breached its fiduciary duties to Plaintiff and Class members in the operation of the Wells Fargo Bank Deposit Sweep Program;
>
> c. Whether Defendants breached the contract with Plaintiff and Class members in the operation of the Wells Fargo Bank Deposit Sweep Program;
>
> d. Whether Defendants' interest rates paid to Plaintiff and Class members were reasonable;

---

[22] https://fa.wellsfargoadvisors.com/zhs-wealth-management-group/fargoradvisors.htm (last accessed August 6, 2024).

e. Whether the fees Defendants collected from the Wells Fargo Bank Deposit Sweep Program were unreasonable;

f. Whether Defendants breached the implied covenant of good faith and fair dealing;

g. Whether Defendants are liable for gross negligence to Plaintiff and Class members in the operation of the Wells Fargo Bank Deposit Sweep Program;

h. Whether Defendants have been unjustly enriched because of the conduct complained of herein; and

i. Whether Plaintiff and Class members are entitled to relief, including damages and equitable relief.

74. **Typicality (Fed. R. Civ. P. 23(a)(3))**. Pursuant to Rule 23(a)(3), Plaintiff's claims are typical of the claims of the Class members. Plaintiff, like all Class members, was paid an unreasonable interest rate in connection with the Wells Fargo Bank Deposit Sweep Program. Accordingly, Plaintiff's claims are typical of other Class member's claims because they arise from the same course of conduct by Defendants, and the relief sought is common to Class members.

75. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4))**. Pursuant to Rule 23(a)(4), Plaintiff and his counsel will fairly and adequately protect the interests of the Class. Plaintiff has no interest antagonistic to, or in conflict with, the interests of the Class members. Plaintiff has retained counsel experienced in prosecuting class actions and breach of fiduciary cases.

76. **Superiority (Fed. R. Civ. P. 23(b)(3))**. Pursuant to Rule 23(b)(3), a class action is superior to individual adjudications of this controversy. Litigation is not economically feasible for individual Class members because the amount of monetary relief available to individual plaintiffs is insufficient in the absence of the class action procedure. Separate litigation could yield inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

77.   **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)).** In the alternative, this action may properly be maintained as a class action, because:

    a.   the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants; or

    b.   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

    c.   Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

78.   **Issue Certification (Fed. R. Civ. P. 23(c)(4)).** In the alternative, the common questions of fact and law, set forth in Paragraph 73, are appropriate for issue certification on behalf of the proposed Class.

## VI. CAUSES OF ACTION

### COUNT I
### BREACH OF FIDUCIARY DUTY

79.   Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

80.   Under common law, Defendants owed fiduciary duties to Plaintiff and Class members who maintained accounts in the Wells Fargo Bank Deposit Sweep Program.

81.   A fiduciary relationship existed between Defendants, as financial and/or investment advisors, on the one hand, and Plaintiff and Class members, as advisees, on the other hand, regarding the Wells Fargo Bank Deposit Sweep Program, including Defendants' holding and

control over funds that belonged to its clients, such as Plaintiff and Class members, regarding their cash sweep balances.

82. As fiduciaries, Defendants owed Plaintiff and Class members the highest degree of trust and confidence in the services it provided to them in the operation of the Wells Fargo Bank Deposit Sweep Program. Defendants' fiduciary duties to Plaintiff and Class members, include, but are not limited to: (a) a duty of care to act in the best interests of clients; (b) a duty of loyalty to clients; (c) a duty of prudence in handling funds that belong to clients; and (d) a duty of good faith to act honestly with respect to client funds. In executing these fiduciary duties, Defendants had a duty to act exclusively for the benefit of Plaintiff and Class members in the operation of the Wells Fargo Bank Deposit Sweep Program.

83. Because of the special agency relationship between Plaintiff and Class members, on the one hand, and Defendants, on the other hand, Plaintiff and Class members relied on Defendants' expertise in knowledge, ability, and skill in the operation of the Wells Fargo Bank Deposit Sweep Program.

84. Defendants breached their fiduciary duties by failing to act in the best interests of clients, including Plaintiff and Class members, by not negotiating and paying a reasonable interest rate on the cash balance in their clients' accounts; and by placing their own interests ahead of their clients' interests by securing increased net interest income at the expense of its clients.

85. As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff and Class members suffered damages in an amount to be determined at trial and seek disgorgement of any undue and unjust gains of Defendants, punitive damages, as well as all other equitable relief deemed just and proper.

86. Defendants' conduct also warrants a punitive damage award because Defendants are guilty of oppression and engaged in conduct that is outrageous and exhibited reckless indifference to the rights of its clients, including Plaintiff and Class members.

## COUNT II
## GROSS NEGLIGENCE

87.     Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

88.     Defendants, as fiduciaries, owed Plaintiff and Class members certain duties in the operation of the Wells Fargo Bank Deposit Sweep Program.

89.     A fiduciary relationship existed between Defendants, as financial and/or investment advisers, on the one hand, and Plaintiff and Class members, as advisees, on the other hand, regarding the Wells Fargo Bank Deposit Sweep Program, including Defendants' holding and control over funds that belonged to Plaintiff and Class members.

90.     Defendants' duties to Plaintiff and Class members, included, but are not limited to, operating the Wells Fargo Bank Deposit Sweep Program for the benefit of their clients, such as Plaintiff and Class members; and negotiating and paying available reasonable interest rates for their clients' cash sweep balances.

91.     Defendants breached their duties by failing to act in the best interests of Plaintiff and Class members, including by not negotiating and paying the available reasonable interest rates on the cash balances in their clients' accounts; and by placing their own interests ahead of Plaintiffs' and Class members' interests by securing increased net interest income at the expense of their clients.

92.     Defendants' conduct as alleged in this Complaint was grossly negligent because their self-serving conduct demonstrates a complete lack of care and reckless disregard for their clients' interests. Defendants' conduct also demonstrates an extreme departure from the ordinary standard of care.

93.     Defendants' gross negligence directly and proximately caused harm to Plaintiff and the Class members. As a result, Plaintiff and Class members suffered damages in an amount to be determined at trial.

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

94. Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

95. The General Agreement, which incorporated the Cash Sweep Disclosure, entered into by Defendants on the one hand and Plaintiff and Class members on the other, provides that New York law applies to services offered by Defendants, including the Wells Fargo Bank Deposit Sweep Program.

96. Under New York common law, a covenant of good faith and fair dealing is implied into every contract.

97. Plaintiff and Class members contracted with Defendants to provide them with financial and/or investment services, including a contractual obligation by Defendants to obtain for Plaintiff and Class members rates of return on their cash balances that are reasonable and to otherwise act as an agent of the clients in the operation of the Wells Fargo Bank Deposit Sweep Program.

98. These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties (both explicit and implied) and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendants would act fairly and in good faith in carrying out its contractual obligations to provide Plaintiff and Class member with fair and reasonable rates of return on their cash sweep balances.

99. Defendants breached these implied covenants of good faith and fair dealing by failing to provide Plaintiff and Class member with fair and reasonable rates of return on their cash sweep balances. Defendants, instead of providing fair and reasonable rates of return on their clients' cash sweep balances, provided far below market rates of return that its clients could have otherwise earned on their cash.

100.     Plaintiff and Class members fulfilled all the terms and obligations of their contract, including paying for Defendants' financial and/or investment services.

101.     Defendants' failure to act in good faith in providing fair and reasonable rates of return on their customers' cash sweep balances denied Plaintiff and Class members the full benefit of their bargain. Plaintiff and Class members received a minimal return on their cash sweep balances that were less than what they could have otherwise earned and less than their reasonable expectations under their contract with Defendants.

102.     As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and Class members sustained damages in an amount to be determined by this Court, including interest on all liquidated sums. Plaintiff also seeks restitution and disgorgement of profits wrongfully obtained.

## COUNT IV
## BREACH OF CONTRACT

103.     Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

104.     Plaintiff and Class members entered into the General Agreement, which incorporates the Cash Sweep Disclosure terms, whereby Defendants are obligated to provide Plaintiff and Class members with financial and/or investment services, including a contractual obligation to negotiate for Plaintiff and Class members rates of return on their cash balances that are reasonable and to otherwise act in the best interest of the clients in the operation of the Wells Fargo Bank Deposit Sweep Program.

105.     Pursuant to the General Agreement and Cash Sweep Disclosure, Defendants were and continue to be contractually obligated to obtain for Plaintiff and Class members rates of return on their cash sweep balances that are reasonable and to otherwise act as in the best interests of the clients in the operation of the Wells Fargo Bank Deposit Sweep Program.

106.     As alleged herein, the rates of return paid to Plaintiff and Class members on their cash sweep balances were not fair and reasonable. As a result, Defendants breached the contract with Plaintiff and Class members.

107.    Accordingly, Plaintiffs and Class members were harmed by Defendants' breach; and sustained damages in an amount to be determined at trial.

**COUNT V**
**UNJUST ENRICHMENT**

108.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

109.    Because of Defendants' wrongful conduct as alleged herein, Plaintiff and Class members received lower interest payments on their cash sweep balances than they would have in a reasonable and fair market.

110.    Because of Defendants' wrongful conduct as alleged herein, Defendants unjustly received a benefit at the expense of Plaintiff and Class members in the form of increased interest income that belonged to Plaintiff and Class members.

111.    It would be unjust and inequitable to allow Defendants to retain these wrongfully obtained benefits.

112.    Plaintiff and Class members are entitled to restitution and disgorgement of the benefits unjustly obtained, plus interest, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class defined above, respectfully request that this Court enter:

(a) An order certifying this case as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as the Class representative, and appointing the undersigned as Class counsel;

(b) A judgment awarding Plaintiff and Class members appropriate monetary relief, including actual damages, equitable relief, restitution, and disgorgement;

(c) An order entering injunctive and declaratory relief as appropriate under the applicable law;

(d) An order awarding Plaintiff and the Class pre-judgment and/or post-judgment interest as prescribed by law;

**CLASS ACTION COMPLAINT**

(e)  An order awarding reasonable attorneys' fees and costs as permitted by law; and

(f)  All other and further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: August 8, 2024                    **GIBBS LAW GROUP LLP**


_/s/ Rosemary M. Rivas_
Rosemary M. Rivas
Rosanne L. Mah
Brian E. Johnson (_pro hac vice forthcoming_)
1111 Broadway, Suite 2100
Oakland, California 94607
(510) 350-9700 (tel.)
(510) 350-9701 (fax)
rmr@classlawgroup.com
rlm@classlawgroup.com
bej@classlawgroup.com

_Attorneys for Plaintiff Daniel Varady_